APRIL M. LINSCOTT, ISB #7036
OWENS & CRANDALL, PLLC
8596 N. Wayne Drive, Ste. A
Hayden, ID 83835
Telephone:   (208) 667-8989
Facsimile:    (208) 667-1939
E-mail:       april@cdalawyer.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SANJAY GUPTA and ARCHANA GUPTA, husband and wife<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF IDAHO, PRIYANKA GAJJAR, an individual, JOHN DOES I THROUGH V and JANE DOES I THROUGH V,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

COME NOW the above-entitled Plaintiffs, SANJAY GUPTA and ARCHANA GUPTA, by and through their counsel of record, Owens & Crandall, and for a cause of action, complain and allege as follows:

**JURISDICTION, VENUE, AND THE PARTIES**

1.      This action arises under federal law, the Civil Rights Act, as amended, Title 42 of the United States Code, Section 1983.

2.      This Court has jurisdiction of the cause under the provisions of Title 29 of the United States Code, Section 621, Title 28 of the United States Code, Section 1331, Title 28

of the United States Code, Section 1343(a) and Title 28 of the United States Code, Section 1367.

3. Venue is proper pursuant to Title 28 of the United States Code, Section 1391(b).

4. Plaintiffs Dr. Sanjay Gupta and Archana Gupta are husband and wife who at all times relevant to this action resided in Twin Falls County within the District of Idaho.

5. Defendant University of Idaho ("the University") is an entity of the State of Idaho. Among its powers is the power to sue and to be sued.

6. Defendant Priyanka Gajjar is an employee of the University.

7. Defendants John Does I through V and Jane Does I through V are employees of the University of Idaho. At all times material hereto, Defendants acted under the color of the statutes, customs, ordinances and usage of the University of Idaho.

8. Plaintiffs claim damages in excess of the minimum jurisdictional amounts necessary to file a civil complaint in the United States District Court for the District of Idaho.

## COMMON ALLEGATIONS

9. At all times material hereto, Defendants acted under color of state law.

10. In 2008, Plaintiff Dr. Gupta was hired at the University of Idaho as an Assistant Professor Department of Plant, Soils and Entomological Sciences. Dr. Gupta was a contracted/permanent or classified employee whose employment was not terminable at will.

11. Dr. Gupta was employed pursuant to the University's personnel policies and procedures, which provided, "In each case, the issue of whether or not adequate cause for termination or dismissal exists is to be determined by an equitable procedure, affording protection to the rights of the faculty member and to the interests of the state of Idaho and its

system of higher education.  The burden of proof that adequate cause exists rests with the institution and its administrative officers, and will be satisfied only by clear and convincing evidence in the record considered as a whole."

12. That said personnel rules, policies, and procedures constituted an employment contract under Idaho law between Dr. Gupta and the University and also constituted a property interest in Dr. Gupta's position of employment which is protected by state and federal law.

13. Dr. Gupta was evaluated twice over his three and a half (3 ½) years with the University of Idaho as an employee.  The first evaluation was satisfactory.  The second evaluation was mostly satisfactory with Dr. Gupta being advised to produce more work related publications.

14. The University did not provide Dr. Gupta with the facilities necessary for him to meet and perform the obligations of his position as Assistant Professor.

15. In May of 2011, Ms. Priyanka Gajjar, who holds a M.S. in Biological Engineering, was hired to work as a Research Support Scientist III for Dr. Gupta.  Ms. Gajjar is a citizen of India and is working in the United States under a H1B visa.

16. Commencing with Ms. Gajjar's hire, Dr. Gupta had concerns about Ms. Gajjar's job performance.  Ms. Gajjar claimed she had the requisite lab skills in her resume and interview to acquire the job, which she did not possess.

17. Dr. Gupta quickly realized that Ms. Gajjar had falsified experience on her resume to get the job.  Dr. Gupta worked to provide additional training to Ms. Gajjar to compensate for her lack of experience.  However, Ms. Gajjar was unable to perform her duties adequately.

18. Dr. Gupta also learned that Ms. Gajjar had been fired from her previous job.

19. In an effort to assist Ms. Gajjar in her performance, Dr. Gupta gave Ms. Gajjar an initial practice performance evaluation showing areas where her work performance needed to improve.

20. Ms. Gajjar was later given a second practice performance evaluation, still showing unsatisfactory work which needed improvement.

21. Finally, when Ms. Gajjar's ninety (90) day (non-practice) evaluation came due, she asked for a one-month extension in order to have further opportunity to improve her skills. Ms. Gajjar fully understood that her work performance was unsatisfactory and that she risked losing her job.

22. Dr. Gupta agreed and provided the requested extension.

23. On or about October 13, 2011, a few days prior to the due date of the extension of her ninety (90) day evaluation, Ms. Gajjar levied accusations against Dr. Gupta to his immediate supervisor, Dr. Jeff Stark.

24. On October 19, 2011, Dr. Gupta received a letter from the University's Human Rights Access and Inclusion notifying him that Ms. Gajjar had made a complaint and that there would be an investigation.

25. Pursuant to University policy and procedure, "If a complaint is oral, the Director will prepare a statement of what it determines the complaint to be and will obtain verification from the complainant that the statement adequately sets forth the complaint," the University was required to have a written statement of the complaint against Dr. Gupta.

26. The purpose of this policy is to allow the person against whom a complaint is made adequate notice of the allegations made against him.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4
W:\April\Gupta, Sanjay 2766\Pleadings\Complaint 10-17-13-FINAL.docx

27. The University violated this procedure by not preparing a statement of the complaint, verified or otherwise. Dr. Gupta was never given the particulars of Ms. Gajjar's complaint so that he could have proper notice of the charges against him and an opportunity to fully respond to the charges.

28. The University policy further requires an informal investigation to be undertaken. This informal investigation never occurred.

29. Instead, a formal investigation was immediately initiated.

30. The University's initial investigation into Ms. Gajjar's allegations prejudiced Dr. Gupta by not allowing him an opportunity to contest the facts the investigators possessed.

31. The investigation process was not conducted in a fair and impartial manner. Early in the investigation process, the investigators commented that their purpose was to protect only Ms. Gajjar professionally and personally, and not to protect Dr. Gupta professionally and personally.

32. On November 2, 2011, the investigators completed their investigation report, in which they concluded that Dr. Gupta had sexually harassed Ms. Gajjar and had threatened her based on her visa status. They recommended that Dr. Gupta be dismissed. However, the report failed to utilize the required "clear and convincing" standard necessary for cause termination.

33. The University further violated its own policies by not allowing Dr. Gupta an opportunity to meet with his immediate supervisor as mandated.

34. Additional University policy was violated when the University assigned Associate Counsel Charles Graham to represent Ms. Gajjar, yet Dr. Gupta was not provided

counsel to defend against the allegations made by Ms. Gajjar, which were highly damaging to Dr. Gupta's career and reputation.

35. The University took a biased role in allowing representation for one of its employees and not the other.

36. Dr. Gupta has been ranked as one out of six top potato experts in the nation. Data from Dr. Gupta's experiments is now being used by the University.

37. Dr. Gupta applied for and obtained significant grant money (over $7 million) for use in his research. The University benefits from Gupta's grant money.

38. At various points in time, the University improperly delayed the process of Dr. Gupta's termination hearing and appeal.

39. The constant delays in the process caused Dr. Gupta considerable emotional and financial distress and undermined his due process rights.

40. The University failed to disclose evidence to Dr. Gupta by the April 4, 2012 deadline in preparation of the April 23, 2012 dismissal hearing.

41. The University presented new evidence, which it had not properly disclosed, some of which was not disclosed until the evening of the hearing. Thus, Dr. Gupta was greatly prejudiced and did not have a fair opportunity to provide a defense or to interview critical witnesses.

42. On November 2, 2011, Dr. Gupta contacted Cheryl Sodorff, one of the investigators, via email, to advise that Ms. Gajjar violated the confidentiality agreement between the parties by telling outside parties of the Indian and scientific community in Jerome, Idaho that Dr. Gupta was "going to prison."

43. The University failed to take any action against Ms. Gajjar for the violation of the confidentiality agreement.

44. Allowing Ms. Gajjar to violate the confidential agreement caused detrimental damage to Dr. Gupta's reputation in the scientific and Indian community.

45. The Dean of the College of Agriculture, Dr. Hammel, also made false and defamatory statements about Dr. Gupta to others outside of the University. Dr. Hammel defamed Dr. Gupta by spreading a rumor that Dr. Gupta had a similar record of sexual harassment with his prior employer (University of Minnesota), which rumor was not true.

46. Upon information and belief, other individuals employed by the University publically disclosed Gajjar's charges against Dr. Gupta. These individuals further disclosed that the charges would lead to Gupta's termination. This public disclosure was made despite Gupta contesting the allegations.

47. University officials told Dr. Gupta, at multiple stages in the termination process that reinstatement was not an option, no matter the outcome of the investigation, the termination hearing or the appeal.

48. University officials threatened Dr. Gupta with severe consequences if he proceeded with his contractual and constitutional rights of due process. Such threats included statements that Dr. Gupta's reputation would be ruined and he would be unable to secure comparable employment.

49. Dr. Gupta attempted to speak with some of the witnesses in preparation for his response and defense. However, he was told by the witnesses that the University had directed them not speak to Dr. Gupta or his attorney.

50. Further, the University declined to allow Dr. Gupta or his representative an opportunity to interview any of the investigators or Ms. Gajjar.

51. The University denied Dr. Gupta the opportunity to provide an appropriate response or defense to the accusations made against him.

52. Dr. Gupta suffered prejudgment, obstruction of justice and denial of due process by the University and its employees.

## COUNT ONE
## WRONGFUL DISCHARGE

53. Plaintiffs reallege paragraphs 1 through 52 as if fully set forth herein.

54. Dr. Gupta was wrongfully discharged when the University failed to follow its contractually and constitutionally obligated process.

55. Dr. Gupta was wrongfully discharged when the University failed to acknowledge the allegations against him were fabricated.

56. Dr. Gupta was wrongfully discharged when the University failed to use a clear and convincing standard of evidence.

57. The University's failure to follow its policies as well as state and federal law was done with malice or with reckless indifference to Dr. Gupta's federally protected rights.

58. Due to the actions and omissions of the University, Dr. Gupta was damaged in an amount to be proven at trial in excess of the minimum jurisdictional limits of the District Court.

59. Dr. Gupta has suffered damages in the form of back pay, front pay, emotional distress, medical and mental health care expenses, loss of employee benefit package attendant to his position of employment, including health and retirement benefits, out of

pocket costs, attorney's fees and costs, loss of usual activities, loss of reputation, and loss of career, as well as career advancement.

60. As a result of the University's actions and/or inactions, Plaintiff Archana Gupta has suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort with Plaintiff Dr. Gupta in an amount to proven at trial but which exceeds the minimum jurisdiction limits of the District Court.

## COUNT TWO
### VIOLATION OF PLAINTIFF'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS AND LIBERTY PURSUANT TO 42 USC §1983

61. Plaintiffs reallege paragraphs 1 through 60 as if fully set forth herein.

62. That at all times material hereto, the University employed Dr. Gupta pursuant to a contract and its personnel policies and procedures, which provided, among other things, that an employee can only be terminated from his/her position of employment for adequate cause.

63. That the University's personnel policies and procedures constituted an employment contract under Idaho law between Dr. Gupta and the University, and also constituted a property interest in Dr. Gupta's position of employment which is protected by state and federal law. Dr. Gupta was denied notice of the allegations made against him.

64. Dr. Gupta was denied a meaningful opportunity to be heard prior to his administrative leave and prior to his termination.

65. Dr. Gupta was denied the opportunity to confront his accuser and interview witnesses.

66. Through its arbitrary, capricious, and retaliatory practices, the University's conduct contravened the doctrine of substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

67. Dr. Gupta has suffered damages as a result of the University's conduct in excess of the minimum jurisdictional limits of the District Court.  Dr. Gupta has suffered damages in the form of past and future back pay, front pay, emotional distress, medical and mental health care expenses, loss of employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and costs, loss of usual activities, loss of reputation, and loss of career, as well as career advancement.

68. As a result of the University's actions and/or inactions, Plaintiff Archana Gupta has suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort with Plaintiff Dr. Gupta in an amount to be proven at trial but which exceeds the minimum jurisdiction limits of the District Court.

## COUNT THREE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. Plaintiffs reallege paragraphs 1 through 68 as if fully set forth herein.

70. The University's treatment of Dr. Gupta was intentional and/or reckless.

71. The University's treatment of Dr. Gupta was extreme and outrageous, and unreasonable such that a discriminatory environment was created and sustained.

72. The University's extreme and outrageous conduct proximately caused Dr. Gupta and Archana Gupta to suffer severe emotional harm.

73. Plaintiffs' emotional harm was severe in that they suffered severe emotional distress, mental anguish, indignation, wounded pride, shame, and despair.  Plaintiffs' damages are in excess of the minimum jurisdictional limits of the District Court.  Dr. Gupta has suffered damages in the form of past and future back pay, front pay, emotional distress, medical and mental health care expenses, loss of employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and costs, loss of usual activities, loss of reputation, and loss of career, as well as career advancement.

74. As a result of the University's actions and/or inactions, Plaintiff Archana Gupta has suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort with Plaintiff Dr. Gupta in an amount to be proven at trial but which exceeds the minimum jurisdiction limits of the District Court.

## COUNT FOUR
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiff realleges paragraphs 1 through 74 as if fully set forth herein.

76. The University had a duty to exercise ordinary care in its dealings with Dr. Gupta.

77. The University breached its duty to the Dr. Gupta.

78. The University's breach of its duty caused Dr. Gupta and Archana Gupta emotional distress including, but not limited to stress, anxiety, sleeplessness and depression. Dr. Gupta and Archana Gupta have been damaged in excess of the minimum jurisdictional limits of the District Court.  Dr. Gupta has suffered damages in the form of past and future back pay, front pay, emotional distress, medical and mental health care expenses, loss of

employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and costs, loss of usual activities, loss of reputation, and loss of career, as well as career advancement.

79. As a result of the University's actions and/or inactions, Plaintiff Archana Gupta has suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort with Plaintiff Dr. Gupta in an amount to be proven at trial but which exceeds the minimum jurisdiction limits of the District Court.

## COUNT FIVE
## BREACH OF CONTRACT

80. Plaintiffs reallege paragraphs 1 through 79 as if fully set forth herein.

81. Dr. Gupta had a valid employment contract with the University, which provided, among other things, that he could only be terminated for adequate cause.

82. The employment contract was created with intent to contract, a valid offer and acceptance, and was supported by good and valuable consideration having been exchanged by and between Dr. Gupta and the University.

83. The University's actions in terminating Dr. Gupta's employment constituted a breach of the contract.

84. The University's breach of the contract caused Dr. Gupta damages in the form of loss of contractual benefits, back pay, front pay, loss of employment benefits, out of pocket costs, attorney fees and loss of reputation in amounts to proven at trial that exceed the minimum jurisdictional limits of the District Court. Dr. Gupta has suffered damages in the form of past and future back pay, front pay, emotional distress, medical and mental health care expenses, loss of employee benefit package attendant to his position of employment,

including health and retirement benefits, out of pocket costs, attorney's fees and costs, loss of usual activities, loss of reputation, and loss of career, as well as career advancement.

85. As a result of the University's actions and/or inactions, Plaintiff Archana Gupta has suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort with Plaintiff Dr. Gupta in an amount to be proven at trial but which exceeds the minimum jurisdiction limits of the District Court.

## COUNT SIX
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

86. Plaintiffs reallege paragraphs 1 through 85 as if fully set forth herein.

87. There is a covenant of good faith and fair dealing implied in all contracts.

88. The conduct of the University hereinbefore described constitutes a breach of the covenant of good faith and fair dealing and has proximately caused Dr. Gupta and Archana Gupta damages in an amount to be proven at trial but which exceeds the minimum jurisdictional limits of the Court.

## COUNT SEVEN
## NEGLIGENT HIRING, TRAINING AND/OR SUPERVISION

89. Plaintiffs reallege paragraphs 1 through 88 as if fully set forth herein.

90. The University had a duty to screen, hire, train and supervise its employees and representative properly in the conduct of their respective jobs.

91. The University knew, or should have known, that the actions or omissions of the investigation violated the Civil Rights Act and Idaho law. The University had a duty to screen, hire, and train and supervise such employees to prevent such illegal behavior. The University failed to adequately train supervisory employees on how to insure that the property and liberty interests of its employees, including Dr. Gupta, were not violated.

Case 3:13-cv-00450-BLW   Document 1   Filed 10/17/13   Page 14 of 16

92. The University had a duty to train and supervise employees in the conduct of their jobs and to instruct, train and discipline employees engaging in illegal behavior and violating the Civil Rights Act. The University knew, or should have known, of its employees' repeated, continuous, and illegal behavior aimed at Dr. Gupta. The University's failure to instruct, train, and discipline its employees was due to a municipal policy of deliberate indifference towards protecting the constitutional rights of its employees.

93. The University breached that duty in that it failed to take any corrective action for its employees' or representatives' behavior.

94. The University's negligent hiring, training, and supervision of its employees and representatives proximately caused Dr. Gupta damages in an amount to be proven at trial but which exceeds the minimum jurisdictional limits of the District Court. Dr. Gupta has suffered damages in the form of past and future back pay, front pay, emotional distress, medical and mental health care expenses, loss of employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and costs, loss of usual activities, loss of reputation, and loss of career, as well as career advancement.

95. As a result of the University's actions and/or inactions, Plaintiff Archana Gupta has suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort with Plaintiff Dr. Gupta in an amount to be proven at trial but which exceeds the minimum jurisdiction limits of the District Court.

**COUNT EIGHT**
**NEGLIGENCE**

96. Plaintiffs reallege paragraphs 1 through 95 as if fully set forth herein.

COMPLAINT AND DEMAND FOR JURY TRIAL - 14
W:\April\Gupta, Sanjay 2766\Pleadings\Complaint 10-17-13-FINAL.docx

97. The University owed a duty of ordinary care to Dr. Gupta and Archana Gupta.

98. The University breached its duty of care to Plaintiffs, Dr. Gupta and Archana Gupta.

99. As a proximate result of the University's breach of its duty of care, Dr. Gupta and Archana Gupta were damaged.

100. The University caused Plaintiffs, Dr. Gupta and Archana Gupta, damages in an amount to be proven at trial but which exceeds the minimum jurisdictional limits of the District Court.

### COUNT NINE
### UNJUST ENRICHMENT

101. Plaintiffs reallege paragraphs 1 through 100 as if fully set forth herein.

102. Gupta conferred the benefit of his expertise and grant procurement upon the University.

103. The University appreciated the benefit Gupta conferred to it.

104. It is inequitable for the University to retain the benefit it received from Gupta without payment of the value of the benefit.

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants as follows:

1. For compensatory damages in an amount to be proven at trial in excess of the minimum jurisdictional amounts necessary to file a civil complaint in the United States District Court for the District of Idaho;

2. For statutory damages, including back pay and front pay as allowed by law;

3.  For compensatory damages for loss of employment and employment benefits, including health and retirement benefits, in an amount to be proven at trial and contractual damages;

4.  For damages related to negligent and intentional infliction of emotional distress;

5.  For punitive or exemplary damages;

6.  For reasonable attorneys' fees and costs;

7.  For pre-judgment and post-judgment interest as allowable by law; and

8.  For such other further relief as the Court deems just and proper.

DATED this 17th day of October, 2013.

                OWENS & CRANDALL, PLLC

                __/s/__April M. Linscott_____
                APRIL M. LINSCOTT, ISB #7036
                Attorneys for Plaintiffs

PLAINTIFFS HEREBY DEMAND A JURY